```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────
ALFREDA SMITH OVESEN,
                    Plaintiff,
                                              04 Civ. 2849 (JGK)
        - against -
                                              MEMORANDUM OPINION AND
MITSUBISHI HEAVY INDUSTRIES OF                ORDER
AMERICA, INC., et al.,
                    Defendants.
───────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

This case arises out of an airplane crash near San Juan Puerto Rico in 2002. The plaintiff, Alfreda Smith Ovesen ("Ovesen"), is the representative of the estate of Svend A. Ovesen (the "decedent"), who was killed after the Mitsubishi MU-2B plane that he was flying crashed. The defendants are two manufacturers of the MU-2B, Mitsubishi Heavy Industries, Ltd., and its subsidiary, Mitsubishi Heavy Industries of America, Inc. (collectively, "Mitsubishi"). The defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that the plaintiff's claims are barred by the eighteen-year statute of repose provided by the General Aviation Revitalization Act of 1994 ("GARA"), Pub. L. No. 103-298, 108 Stat. 1552, (appended as a note to 49 U.S.C. § 40101). Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

I.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo, 22 F.3d at 1224. The substantive law applicable to the claims will identify which issues are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); see also Colon v. Trump Int'l Hotel & Tower, No. 10 Civ. 4794, 2011 WL 6092299, at *1 (S.D.N.Y. December 7, 2011).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); Gallo, 22 F.3d at 1223. Summary

judgment is inappropriate if there is any evidence in the record from any source from which a reasonable inference may be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  The moving party has the initial burden of demonstrating the lack of a material issue of fact. If the moving party meets its burden, the burden shifts to the nonmoving party to bring forward "specific facts showing a genuine issue for trial."  Colon, 2011 WL 6092299, at *1.  To meet its burden, the nonmoving party must produce evidence from the record and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

**II.**

The following facts are undisputed unless otherwise noted.

On April 15, 2002, the decedent was piloting a Mitsubishi MU-2B-35 model twin engine propeller aircraft, Serial No. 558 (the "Aircraft"), operated by his company, Crucian International, Inc.  The Aircraft was in a holding pattern near San Juan, Puerto Rico when it crashed, killing the decedent.  This lawsuit seeks to recover damages for the decedent's death

and the loss of Crucian's property. (Def.'s R. 56.1 Stmt. at ¶¶ 1-2, 7; Pl.'s R. 56.1 Resp. at ¶¶ 1-2, 7.)

The Aircraft was designed and manufactured by the defendant Mitsubishi Heavy Industries in Japan, and exported to the United States pursuant to a Certificate of Airworthiness for Export issued by the Japan Civil Aviation Bureau (the "JCAB") in 1971. (Def.'s R. 56.1 Stmt. at ¶ 2; Pl.'s R. 56.1 Resp. at ¶ 2.) The Aircraft was imported to the United States that same year, pursuant to an Import Type Certificate, Type Certificate A2PC, issued by the United States Federal Aviation Administration (the "FAA") under what is now 14 C.F.R. § 21.29. (Def.'s R. 56.1 Stmt. ¶ 3; Pl.'s R. 56.1 Resp. ¶ 3.) Several models of Mitsubishi aircraft, including the MU-2B-35 model, received an A10SW Type Certificate, which allowed for domestic production of those models in the United States, in 1976. (Pl.'s R. 56.1 Resp. ¶ 3; Def.'s R. 56.1 Repl. ¶ 3.)

The Aircraft received an airworthiness certificate from the FAA in 1972, and was sold to its first purchaser later that year. (Def.'s R. 56.1 Stmt. ¶ 4; Pl.'s R. 56.1 Resp. ¶ 4.)

Ovesen brought this lawsuit against Mitsubishi in 2004. In August, 2009, after extensive discovery and motion practice, Mitsubishi moved for summary judgment, arguing that the eighteen year statute of repose in GARA barred Ovesen's claims. Ovesen argued in response that an exception to the GARA statute of

4

repose exists when the manufacturer of an aircraft has "knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft . . . , that is causally related to the harm which the claimant allegedly suffered," GARA § 2(b)(1), and that this exception was applicable in Ovesen's case because Mitsubishi had withheld a 1973 report (the "CAA Report") from the United Kingdom's Civil Aviation Authority (the "CAA") that allegedly highlighted performance problems experienced by the MU-2B in executing maneuvers similar to the holding pattern that the decedent was flying when the accident occurred.  At oral argument on January 11, 2010, this Court denied Mitsubishi's motion for summary judgment, finding that Ovesen had "at least raised a material issue of fact as to whether the concerns raised in the CAA report regarding the control of the plane at low speeds were causally related to Mr. Ovesen's crash."  (Jan. 11, 2010 Oral Arg. Tr. at 54).  The motion was denied without prejudice to the re-filing of another motion for summary judgment.  (Jan. 11, 2010 Oral Arg. Tr. at 61).

After further discovery, this motion for summary judgment followed.  In this motion, the parties again dispute whether the 1973 CAA Report can serve as a basis for invoking the relevant

5

GARA exception.  Mitsubishi also raises a new legal argument: that the CAA Report is not "required information" under the GARA fraud exception with respect to the Aircraft because the relevant regulation defining "required information" exempts information regarding certain imported aircraft, including the Aircraft at issue in this case.[1]

### III.

GARA provides that "no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft" more than 18 years after the date of delivery of the aircraft to its first purchaser.  GARA § 2(a), 3(3).  It is uncontested that, if no exception applied, the GARA's statute of repose would bar Ovesen's claims because the decedent's accident took place more than 18 years after the plane's initial sale, and the other statutory definitions are met in this case.

---

[1] After oral argument, Ovesen argued in a series of letters that Mitsubishi may not raise this new argument because it did not do so in its first motion for summary judgment.  However, when the Court allowed Mitsubishi to bring another motion on the basis of the GARA statute of repose, the Court did not limit the scope of that motion.  (See Jan. 11, 2010 Oral Arg. Tr. at 31–33).  Moreover, it would be unreasonable for the Court allow a case to proceed to trial where, as here, dismissal is required as a matter of law.

The GARA provides four exceptions to the statute of repose, and only one is at issue here.  That exception allows an otherwise barred action to proceed if:

> the manufacturer with respect to a type certificate or airworthiness certificate for . . . an aircraft . . . knowingly misrepresented to the [FAA], or concealed or withheld from the [FAA], required information that is material and relevant to the performance or the maintenance or operation of such aircraft . . . that is causally related to the harm which the claimant allegedly suffered.

GARA §2(b)(1); see also Robinson v. Hartzell Propeller, Inc., 326 F. Supp. 2d 631, 647 (E.D. Pa. 2004); Rickert v. Mitsubishi Heavy Indus., Ltd., 929 F. Supp. 380, 381 (D. Wyo. 1996).

The parties also agree that whether or not the CAA Report is "required information" is governed by 14 C.F.R. § 21.3, which provides:

> The holder of a type certificate . . . must report any failure, malfunction, or defect in any product or article manufactured by it that it determines has resulted in any of the occurrences listed in paragraph (c) of this section.

14 C.F.R. § 21.3(a); see also Hartzell, 326 F. Supp. 2d at 657-59 (analyzing what constitutes "required information" under GARA with reference to 14 C.F.R. § 21.3).  The "occurrences" in paragraph (c) include "[a]ny structural or flight control system malfunction, defect, or failure which causes an interference with normal control of the aircraft for [sic] which derogates the flying qualities."  14 C.F.R. § 21.3(c)(11).  Ovesen argues that the 1973 CAA Report documents such a "malfunction, defect,

7

or failure," and thus that the report was required information pursuant to § 21.3(a).

However, the same regulation also provides that "[t]he requirements of [14 C.F.R. § 21.3(a)] do not apply to . . . [f]ailures, malfunctions, or defects in products or articles . . . [m]anufactured by a foreign manufacturer under a U.S. type certificate issued under § 21.29 or under an approval issued under § 21.621." Id. at § 21.3(d)(2).

The parties do not do not dispute that the Aircraft was a product or article "[m]anufactured by a foreign manufacturer under a U.S. type certificate issued under § 21.29," because the A2PC type certificate was such a type certificate. Id.; (see Def.'s R. 56.1 Stmt. ¶ 3; Pl.'s R. 56.1 Resp. ¶ 3.) The issue is whether this exemption from the reporting requirements of 14 C.F.R. § 21.3(a) means that, as a matter of law, Ovesen cannot establish the concealment of "required information" in this case, and thus that she cannot escape GARA's statute of repose.

The plaintiffs argue that, because the defendants later began manufacturing this model of aircraft in the United States under the AS10W type certificate, and because the AS10W type certificate does not fall within the § 21.3(d)(2) exemption, the defendants became obligated under § 21.3(a) to disclose the 1973 CAA Report to the FAA when they obtained the AS10W type certificate for the MU-2B in 1976.

8

This argument is unpersuasive.  The GARA fraud exception applies on a type certificate basis.  Cf. Sheesley v. The Cessna Aircraft Co., Nos. 02 Civ. 4185, 03 Civ. 5011, 03 Civ. 5063, 2006 WL 1084103, at *6 (D.S.D. April 20, 2006) ("Congress understood the type certificate application process when it adopted GARA.").  The fraud exception to GARA's statute of repose applies to a "manufacturer with respect to a type certificate for . . . an aircraft," and penalizes the concealment of "required information that is material and relevant to the performance or the maintenance or operation of such aircraft."  GARA § 2(b)(1).  Similarly, the regulation places information sharing requirements on the "holder of a type certificate," and exempts from those requirements information related to problems with aircraft "[m]anufactured by a foreign manufacturer under a U.S. type certificate issued under § 21.29."  14 C.F.R. § 21.3(a), (d).

It would read out these specific references to the type certificate of an aircraft in GARA and in § 21.3 to hold that the "required information" element of the GARA fraud exception can apply to information that was not required under the type certificate of the aircraft at issue, simply because other, similar (or even identical) aircraft were later manufactured under a non-exempt type certificate.  It would moreover limit starkly § 21.3(d) to hold that the information sharing exemption

9

for foreign aircraft manufacturers in that provision ends retroactively whenever a manufacturer decides to manufacture the same type of aircraft in the United States under a new type certificate.  The text of both the regulation and the statute compels the opposite conclusion: When, as in this case, it is undisputed that the specific aircraft at issue was manufactured under a type certificate that exempts the manufacturer from sharing information directly with the FAA, the fraud exception cannot be established by reliance on 14 C.F.R. § 21.3(a), because that provision does not apply.

This result is not only required by the plain text of the statute and the regulation, but comports with the intent of the FAA, the drafter of the regulation, to put the responsibility for providing information about foreign manufactured aircraft on the foreign aviation authorities in the nation where the manufacturing takes place.  See Technical Standard Order (TSO) Revision Plan, 45 Fed Reg. 38,342, 38,344 (June 9, 1980) ("Another commenter asked if imported articles would be exempt from the reporting requirements . . . . Section 21.3(d)(2) does exempt foreign manufacturers from the reporting requirements of § 21.3(a) because there are existing means by which the FAA obtains the necessary information from the appropriate airworthiness authorities in the country of manufacture."); see also, e.g., Turner Repl. Decl. Ex. A ("Sullivan Dep."), at 140

("21.3 did not require [the 1973 CAA Report] to be provided under the foreign type certificate. However, the JCAB is required . . . to report such things."). This result also comports with GARA's statutory purpose. Congress "believed that manufacturers were being driven to the wall because, among other things, of the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold." Lyon v. Agusta S.P.A., 252 F.3d 1078, 1084 (9th Cir. 2001) (citing H.R. Rep. No. 103-525, pt. I, at 1-4 (1994), reprinted in 1994 U.S.C.C.A.N. 1638, 1638-41). It would contravene that purpose to hold that an otherwise time-barred cause of action with respect to a foreign manufactured aircraft may be brought because the manufacturer, by later manufacturing other, similar aircraft under a new type certificate, has inadvertently restored its potential liability.

The plaintiff's reading of the statute leads to other problems. The GARA fraud exception applies when the "required information" is "causally related to the harm which the claimant allegedly suffered." GARA § 2(b)(1). If the plaintiffs were correct that the exception could be established based on the alleged concealment of information that was not required by the FAA with regard to the specific aircraft at issue in a given lawsuit, a causal relationship arguably could be established whenever the disclosure of that information might have resulted

11

in the FAA's grounding the class of aircraft at issue based on subsequent developments. This is an expansive reading of the statute that would allow liability based on information that might have little to do with the specific aircraft at issue. Moreover, it is an interpretation that would require courts to second guess the FAA, and to engage in extensive hypothetical consideration of what the FAA might do in response to a given piece of information. Indeed, the plaintiff argues on this motion that had "the FAA been given the CAA report and determined that this model aircraft needed to be grounded it would certainly have grounded each aircraft of this same model, whether manufactured under the import type certificate or the domestic type certificate . . . ." (Pl.'s Mem. in Opp. at 18.) That reasoning is divorced from the issue of what information was required to be produced for the specific aircraft at issue in the lawsuit.

Because disclosure of the CAA Report was exempted under § 21.3(d) from the reporting requirement of § 21.3(a) for the Aircraft at issue in this case, the CAA Report was not required to be produced to the FAA within the meaning of the GARA § 2(b)(1) exception to the 18 year statute of repose. This lawsuit is therefore barred by that statute of repose, and Mitsubishi's motion for summary judgment is therefore **granted**.

Because this issue is dispositive, the Court need not reach the parties' other arguments.

IV.

The defendants also make three motions in limine to exclude the proffered expert testimony of Donald Kennedy, John Dow and Richard Sullivan pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Because summary judgment based on the GARA statute of repose is proper, these motions are **denied without prejudice** as moot.

CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent not specifically addressed above, they are either moot or without merit. For the reasons stated above, the defendants' motion for summary judgment is **granted**, and the motions in limine to exclude expert testimony are **denied without prejudice**. The Clerk is directed to enter Judgment dismissing the Complaint and closing this case. The Clerk is also directed to close all pending motions.

SO ORDERED.

Dated: New York, New York
February 29, 2012

John G. Koeltl
United States District Judge

13