**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**ALFREDA SMITH OVESEN,**

                 **Plaintiff,**           04 Civ. 2849 (JGK)

    - against -                          **MEMORANDUM OPINION AND**
                                       **ORDER**
**MITSUBISHI HEAVY INDUSTRIES OF**
**AMERICA, INC., et al.,**

                 **Defendants.**
────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    This case arises out of an airplane crash near San Juan Puerto Rico in 2002.  The plaintiff, Alfreda Smith Ovesen ("Ovesen"), is the representative of the estate of Svend A. Ovesen (the "decedent"), who was killed after the Mitsubishi MU-2B plane that he was flying crashed.  The aircraft was operated by the decedent's company, Crucian International, Inc. ("Crucian").  The defendants are two manufacturers of the MU-2B, Mitsubishi Heavy Industries, Ltd., and its subsidiary, Mitsubishi Heavy Industries of America, Inc. (collectively, "Mitsubishi").  On February 29, 2012, this Court granted summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that the plaintiff's claims are barred by the eighteen-year statute of repose provided by the General Aviation Revitalization Act of 1994 ("GARA"), Pub. L. No. 103-298, 108 Stat. 1552, (appended as a note to 49 U.S.C. § 40101).  Ovesen

has now moved for reconsideration of that decision pursuant to Local Rule 6.3.

I.

The standard to be applied to a motion for reconsideration under Local Rule 6.3 is well-established. It is the same as the standard that was applied under former Local Civil Rule 3(j). See United States v. Letscher, 83 F. Supp. 2d 367, 382 (S.D.N.Y. 1999) (collecting cases). The moving party is required to demonstrate that "the Court [ ] overlooked controlling decisions or factual matters that were put before it on the underlying motion, and which, had they been considered, might have reasonably altered the result before the court." Vincent v. Money Store, No. 03 Civ. 2876, 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011) (citation omitted).

The decision to grant or deny a motion for reconsideration "rests within the sound discretion of the district court." Id. (citation omitted). The rule "is narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." Walsh v. McGee, 918 F. Supp. 107, 110 (S.D.N.Y. 1996) (citation omitted); see also Eaton Vance Mut. Funds Fee Litig., 403 F. Supp. 2d 310, 313 (S.D.N.Y. 2005), aff'd, Bellikoff v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007); Vincent, 2011 WL 5977812, at *1.

**II.**

Ovesen brought the underlying wrongful death action in 2004, after the decedent was killed in a crash while piloting a Mitsubishi MU-2B-35 model twin engine propeller aircraft, Serial No. 558 (the "Aircraft") near San Juan, Puerto Rico.  This lawsuit seeks to recover damages for the decedent's death and the loss of Crucian's property.  Ovesen v. Mitsubishi Heavy Indus. of Am., Inc., No. 04 Civ. 2849, 2012 WL 677953, at *2 (S.D.N.Y. Mar. 1, 2012).  The Aircraft was designed and manufactured by Mitsubishi in Japan, and thereafter exported to the United States pursuant to a Certificate of Airworthiness for Export issued by the Japan Civil Aviation Bureau (the "JCAB") in 1971.  The Aircraft was imported to the United States pursuant to an Import Type Certificate, Type Certificate A2PC, issued by the United States Federal Aviation Administration (the "FAA") under what is now 14 C.F.R. § 21.29.  Id.

Mitsubishi ultimately moved for summary judgment, arguing that the eighteen-year statute of repose in GARA barred Ovesen's claims.  Ovesen argued in response that an exception to the GARA statute of repose exists when the manufacturer of an aircraft has "knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation

3

of such aircraft . . . , that is causally related to the harm which the claimant allegedly suffered," GARA § 2(b)(1), and that this exception was applicable in Ovesen's case because Mitsubishi had withheld a 1973 report (the "CAA Report") from the United Kingdom's Civil Aviation Authority (the "CAA") that allegedly highlighted performance problems experienced by the MU-2B in executing maneuvers similar to the holding pattern that the decedent was flying when the accident occurred.  Id.

Mitsubishi argued in response that the CAA Report was not "required information" for the purpose of the exception to GARA's statute of repose.  The parties agreed, and the plaintiff does not dispute, that whether the CAA Report is "required information" is governed by 14 C.F.R. § 21.3, which provides:

> The holder of a type certificate . . . must report any failure, malfunction, or defect in any product or article manufactured by it that it determines has resulted in any of the occurrences listed in paragraph (c) of this section.

14 C.F.R. § 21.3(a); see also Ovesen, 2012 WL 677953, at *3. However, the same regulation also provides that "[t]he requirements of [14 C.F.R. § 21.3(a)] do not apply to . . . [f]ailures, malfunctions, or defects in products or articles . . . . [m]anufactured by a foreign manufacturer under a U.S. type certificate issued under § 21.29 or under an approval issued under § 21.621."  14 C.F.R. at § 21.3(d)(2); see also Ovesen, 2012 WL 677953, at *3.  The parties agreed, and the plaintiff

4

does not now dispute, that "the Aircraft was a product or article '[m]anufactured by a foreign manufacturer under a U.S. type certificate issued under § 21.29,' because the A2PC type certificate was such a type certificate." Id. at *4.

This Court found that, in accordance with the plain language of the regulation, the CAA Report was not "required information" under GARA, and therefore that failure to provide the CAA Report was not a basis for the plaintiff to avoid GARA's statute of repose. Id. at *4-*6.  The Court found that "[t]his result is not only required by the plain text of the statute and the regulation, but comports with the intent of the FAA, the drafter of the regulation, to put the responsibility for providing information about foreign manufactured aircraft on the foreign aviation authorities in the nation where the manufacturing takes place." Id. at *5.  The Court further found that "[t]his result also comports with GARA's statutory purpose," because "Congress 'believed that manufacturers were being driven to the wall because, among other things, of the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold.'" Id. (quoting Lyon v. Agusta S.P.A., 252 F.3d 1078, 1084 (9th Cir. 2001)).  The Court granted summary judgment in favor of Mitsubishi.

5

**III.**

The plaintiff offers one argument in this motion for reconsideration.  Relying on GARA's legislative history, Ovesen argues that Congress intended to benefit the <u>domestic</u> aircraft manufacturing industry.  The plaintiff does not challenge the Court's interpretation of the plain language of 14 C.F.R. § 21.3.  However, the plaintiff argues that 14 C.F.R. § 21.3(d), which exempts from the definition of "required information" in § 21.3(a) certain information, like the CAA Report, relating to aircraft manufactured in foreign countries, is contrary to Congress' intent to benefit domestic manufacturers.  Ovesen thus argues that the Court should reconsider its interpretation of § 21.3.  Ovesen relies for legal authority upon the statement in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), that "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  <u>Id.</u> at 843 n.9.

The weakness of this argument is demonstrated by the fact that it was never made in response to the original motion.  New arguments are not a basis for a motion for reconsideration, because the Court did not overlook an argument that was never made.  In any event, the argument is without merit.

The passage in Chevron on which the plaintiff relies stands for the basic proposition that, where there is no need for interpretation of a statute by an executive agency, because the statutory text itself contains no ambiguity and thus Congress has left no gap to fill, then the statutory text itself is the law.  See, e.g., Carcieri v. Salazar, 555 U.S. 379, 391 (2009) ("Congress left no gap in [the statute] for the agency to fill. Rather, it explicitly and comprehensively defined the term by including only three discrete definitions.").  This proposition is often referred to as Chevron Step One.  See, e.g., Garcia-Villeda v. Mukasey, 531 F.3d 141, 146 (2d Cir. 2008) ("Under the first prong of Chevron, we determine 'whether Congress has directly spoken to the precise question at issue,' . . . . 'If the intent of Congress is clear, that is the end of the matter . . . .'" (citations omitted)).  That proposition does not help the plaintiff here, because the term "required information" in GARA is not only intrinsically ambiguous, but presupposes that the agency in question, the FAA, is the entity setting the requirements.  See GARA § 2(b)(1) (providing an exception to the statute of repose when the manufacturer of an aircraft has "knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information" (emphasis added)).  Congress did not define "required information" in GARA

7

and thus plainly did not speak "to the precise question at issue," Chevron, 467 U.S. at 842, namely, the parameters of "required information."  The teaching of Chevron is that, where such ambiguity in a statutory term exists, "the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Id. at 843; see also id. at 844 ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer," and courts should recognize "the principle of deference to administrative interpretations").[1]

To the extent Ovesen argues that the Court should interpret 14 C.F.R. § 21.3 differently, to comport with Congress' ostensible intent to benefit domestic, but not foreign, aircraft manufacturers, this argument fails.  Ovesen has not argued that the Court's interpretation of § 21.3 in the previous Memorandum Opinion and Order was incorrect with respect to the plain text of § 21.3, or even that the language of § 21.3 is ambiguous.  There is no statutory avoidance canon that permits the Court to

---

[1] In addition, an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation."  Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks omitted).  With respect to this regulation, the Court previously noted the FAA's statement in the Federal Register that "Section 21.3(d)(2) does exempt foreign manufacturers from the reporting requirements of § 21.3(a) because there are existing means by which the FAA obtains the necessary information from the appropriate airworthiness authorities in the country of manufacture."  Ovesen, 2012 WL 677953, at *5 (quoting Technical Standard Order (TSO) Revision Plan, 45 Fed Reg. 38,342, 38,344 (June 9, 1980)).

ignore the plain meaning of a regulation promulgated by an agency entrusted with the authority to promulgate precisely those regulations.  Cf. Garcia-Villeda, 531 F.3d at 149 ("[O]nce an ambiguous statute has been interpreted by the agency in charge of its implementation, we lack the authority to re-construe the statute, even to avoid potential constitutional problems.") (internal quotation marks omitted).  Moreover, even if such a canon did exist, avoidance generally requires "two plausible statutory constructions," id. (quoting Clark v. Martinez, 543 U.S. 371, 380-81 (2005)), and in this case there is no argument that a different interpretation of § 21.3's plain text is plausible.  Ovesen has therefore presented no basis for reconsideration of the Court's interpretation of 14 C.F.R. § 21.3 in this case.

To the extent that Ovesen can be heard to argue that § 21.3 runs afoul of GARA, and thus should be vacated, this argument fails too, because § 21.3 is a reasonable, permissible construction of "required information."[2]  The plain text of the

---

[2] The Court in Chevron explained that "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency," in which case the resulting "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  Chevron, 467 U.S. at 843-44. In other instances, "the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by . . . an agency." Id. at 844.  It is unnecessary to consider whether

statute indicates that "required information" means "information required by the FAA"; otherwise it would make little sense to key the exception to the statute of repose to withholding or misrepresenting such information specifically to the FAA. See GARA § 2(b)(1). The exception's function is to deny the benefits of the statute of repose to those who "knowingly misrepresent[] to the Federal Aviation Administration, or conceal[] or withh[o]ld from the Federal Aviation Administration," certain "required information." Id. Misrepresentation, withholding, and concealment are terms that presuppose a duty to disclose certain information to the FAA. However, as the Court explained in its previous Opinion, the FAA has "put the responsibility for providing information about foreign manufactured aircraft on the foreign aviation authorities in the nation where the manufacturing takes place." Ovesen, 2012 WL 677953, at *5. Nothing in GARA indicates a congressional intent to require that manufacturers, as opposed to foreign aviation authorities, provide certain information. In the absence of any obligation on a manufacturer to disclose certain information to the FAA, it is reasonable to conclude that such a manufacturer cannot misrepresent, withhold, or conceal that information to the FAA. The FAA's construction of

---

the delegation of authority here is explicit or implicit, because the interpretation of the statute is reasonable.

"required information" as excluding information that the FAA procures from non-manufacturer sources is therefore reasonable.

More broadly, the plaintiff points to no case where any court has held that foreign manufacturers are not subject to GARA and its statute of repose. GARA makes no such distinction and numerous cases have applied GARA to foreign aircraft manufacturers. See, e.g., LaHaye v. Galvin Flying Serv., Inc., 144 F. App'x 631, 633 (9th Cir. 2005) ("We reject the appellant's contention that GARA's statute of repose does not apply to foreign manufacturers of general aviation aircraft."); Lyon, 252 F.3d at 1084; Rickert v. Mitsubishi Heavy Industries, Ltd., 923 F. Supp. 1453 (D. Wyo.), rev'd on re'hrng. on other grounds, 929 F. Supp. 380 (D. Wyo. 1996).

Nor is § 21.3 at odds with GARA's putative legislative purpose. Ovesen asserts that Congress' clear intent in passing GARA was to boost domestic aircraft manufacturing. In the context of this case, Ovesen's argument is counterproductive. Ovesen argues that Mitsubishi subjected itself to the GARA exception for fraud when, after the specific aircraft at issue in this case had already been imported, Mitsubishi obtained a certificate to manufacture aircraft of the same model in the United States. Ovesen argues that the CAA Report was "required information" because Mitsubishi was manufacturing the same model of aircraft in the United States under a type certificate not

11

covered by § 21.3(d). As the Court noted in its previous Opinion, "[i]t would contravene th[e] purpose [of GARA] to hold that an otherwise timebarred cause of action with respect to a foreign manufactured aircraft may be brought because the manufacturer, by later manufacturing other, similar aircraft under a new type certificate, has inadvertently restored its potential liability." Ovesen, 2012 WL 677953, at *5. Such a rule would disincentivize foreign manufacturers from seeking new type certificates to manufacture their aircraft in the United States. The current rule avoids that result. Because Ovesen has not shown that the Court "overlooked controlling decisions or factual matters" that would have altered its previous decision, the motion for reconsideration must be **denied**.

## CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent not specifically addressed above, they are either moot or without merit. For the reasons stated above, the plaintiff's motion for reconsideration is **denied**.

**The Clerk is directed to close Docket No. 189.**

SO ORDERED.
Dated:   New York, New York
         May 5, 2012

/s/ John G. Koeltl
John G. Koeltl
United States District Judge